Burke, Williams & Sorensen, LLP
Stephen H. Galton (SBN 046732)
sgalton@bwslaw.com
Keiko J. Kojima (SBN 206595)
kkojima@bwslaw.com
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Telephone: 213.236.0600
Facsimile: 213.236.2700

Attorneys for Defendants Provident Life and Accident Insurance Company and U.S. Bancorp Long Term Disability Plan

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRUCE TALLEY,<br>Plaintiff,<br>v.<br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; U.S. BANCORP LONG TERM DISABILITY PLAN,<br>Defendants. | Case No. 08-CV-0202-H-NLS<br>**[PROPOSED] COUNTERCLAIM**<br>1. Fraud<br>2. Concealment<br>3. Negligent Misrepresentation<br>4. Unjust Enrichment |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; U.S. BANCORP LONG TERM DISABILITY PLAN,<br>Counterclaimants,<br>v.<br>BRUCE TALLEY,<br>Counterdefendant. | |

Defendants and Counterclaimants Provident Life and Accident Insurance Company ("Provident") and U.S. Bancorp Long Term Disability Plan ("the Plan") allege as follows:

**EXHIBIT A**

## JURISDICTION AND VENUE

1. Provident is a corporation, organized under the laws of the State of Tennessee, with its principal place of business located in Chattanooga, Tennessee, and is licensed and authorized to transact and is transacting business in San Diego County, State of California, and within this judicial district.

2. U.S. Bancorp established and maintains an employee welfare benefit plan, funded, in part, by a group long-term disability policy number 125311-0001 issued by Provident, effective January 1, 1999.

3. Counterdefendant Bruce Talley ("Talley") is an individual and who alleges to be a citizen and resident of San Diego County, California. Talley was a participant in the Plan and insured under the Provident LTD policy.

4. Supplemental jurisdiction exists over this Counterclaim pursuant to 28 U.S.C. §1367(a) because claims asserted in this Counterclaim form part of the same case or controversy as those asserted in the Complaint, and arise from a common nucleus of operative facts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966).

## FACTS COMMON TO ALL COUNTS

5. U.S. Bancorp established and maintained an employee welfare benefit plan (“the Plan”) that is funded, in part, by a group long-term disability (“LTD”) policy no. 125311-0001 (“the Policy”) issued by Provident. The Plan provides LTD benefits to eligible employees of U.S. Bancorp.

/ / /

6. At all relevant times in this Counterclaim, Talley was a participant in the Plan and was insured for LTD benefits under the Policy.

7. The Policy provides benefits for Class 1 employees (such as Talley) in the amount of 60% of the employee's monthly earnings to a maximum benefit of $7,500 per month before reduction of benefit offsets, subject to a 180-day elimination period.

8. In April 2003, Talley submitted a claim for LTD benefits under the Policy/Plan, asserting that he had been unable to work since October 29, 2002 due to severe depression and anxiety.

9. After the elimination period expired, Provident began paying Talley benefits under the Policy/Plan, starting on April 28, 2003.

10. On or around May 16, 2007, Provident concluded, based on its claims review and investigation, including independent medical examinations and medical reviews, that Talley was not precluded from performing his occupational duties. Benefits were terminated effective April 30, 2007.

11. On or around July 17, 2007, Talley appealed the termination of his claim.

12. After Provident's further review of Talley's claim on appeal, including consideration of additional documentation submitted by Talley, on or around January 17, 2008, Provident upheld its decision to terminate benefits.

/ / /

/ / /

13. During his claim, Talley represented that he was not working, was disabled, and was not able to work. These representations included, but are not limited to the following:

a. On April 18, 2003, Talley filled out a disability claim form, stating that he was unable to work due to depression and anxiety, which rendered him unable to perform his job duties.

b. On June 6, 2003, Talley completed a claimant's questionnaire, reporting that he was not currently working, and that his medical condition affected his ability to interface with customers and sell investment products. Responding to whether vocational activities were in his treatment plan, he stated that his depression was so deep, his doctors felt he needed an extended break from the atmosphere.

c. On November 21, 2003, Talley represented in a claimant's supplemental statement that he was unable to work due to deep depression and the large number of lawsuits and problems he has to deal with which take much of his time and energy. He was unsure when he could return to work, even part-time.

d. On February 17, 2004, Talley represented in a claimant's supplemental statement that he was unable to work due to severe depression and was unsure about when he would be able to work, even part-time.

e. On March 19, 2004, Talley filled out a claimant's supplemental statement representing that he was unable to work because he was severely and chronically depressed. He represented that his mental state prohibited him from returning to work and that he had many problems to deal with.

f. On May 3, 2004, Talley filled out a claimant's supplemental statement representing that he was unable to work because he was severely and chronically depressed. He had a large number of very complicated problems to resolve.

g. On June 1, 2004, Talley filled out a claimant's supplemental statement representing that he remained severely and chronically depressed. His problems required constant attention and it was unknown when he might return to work, even part-time.

h. On June 26, 2004, Talley represented in a claimant's supplemental statement that he was unable to work due to severe and chronic depression. His problems were overwhelming. As for activities, he was able to read when he could concentrate. He unsure about when he would be able to work.

i. On July 31, 2004, Talley represented in a claimant's supplemental statement that he was unable to work because his time was consumed with his problems. His depression was severe and chronic. He found it difficult to concentrate and completing tasks was a problem. He unsure about when he would be able to work.

j. On September 4, 2004, Talley represented in a claimant's supplemental statement that he was unable to work as he remained severely and chronically depressed. He was in a very difficult situation and had to spend a lot of time dealing with his problems.

k. On October 7, 2004, Talley represented in a claimant's supplemental statement that his severe and chronic depression made it impossible

for him to perform his duties. He was constantly dealing with his problems and it was unknown when he might return to work.

l. On November 12, 2004, in a telephone interview with Provident, Talley denied working in any capacity and had no plans to return to work at that time.

m. On January 20, 2005, in a telephone interview with Provident, Talley represented that his overall condition had not really changed, and until the situation surrounding him clears up, he did not think that anything would change. He stated that he was suicidal at times, suffered humiliation, did not trust other people, and was forgetful. He reported that his physicians believed that until his situation lifted, he would not get better.

n. Talley continued to seek disability benefits from Provident, expressing his interest in Russia and the Russian language but concealing the fact he conducted business in Russia as a real estate developer.

14. Talley's representations were false, fraudulent, and intended to deceive Provident into paying LTD benefits to which Talley was not entitled.

15. Provident discovered that Talley misrepresented his work activities and claimed inability to work. Specifically, in or about January 2008, Provident found out that Talley was working as a real estate developer in Russia. He maintained a website, www.blackseadevelopment.com, which explains his extensive background in establishing companies, purchasing property, and making contacts in Russia. Talley states in his website:

/ / /

> "I have spent the last 5 years living and traveling in the Russian Federation, learning the language and culture and making personal and business contacts. During this time I have seen the country change very quickly. Russia's natural resources have given the country a huge currency reserve and a strong economy. Moscow is now one of the most rapidly growing cities in the world. Construction, manufacturing and retail have exploded there. However, other regions are beginning to experience this type of growth and development. I believe there are great opportunities in land ownership and real estate development in these regions, as well as Moscow. To that end, I have established companies in Russia, purchased property and identified areas of opportunity, including specific ventures. My network in Russia is constantly searching for projects with great potential. I am seeking financial partners to invest in the best."

16. Due to Talley's misrepresentations, Provident paid benefits under the Policy/Plan to which he was not entitled and which he should return.

## FIRST CAUSE OF ACTION
## (FRAUD)

17. Defendants and Counterclaimants incorporate herein by reference the allegations set forth in paragraphs 1 through 16.

/ / /

/ / /

18. Beginning in April 2003, Talley submitted a claim for LTD benefits under the Plan, representing that he was unable to work since October 29, 2002 and was not working.

19. In order to continue receiving benefits, Talley knowingly represented to Provident that he was unable to work due to severe depression and anxiety, had not worked and was unable to work and/or perform the Important Duties of his occupation.

20. Talley's representations concerning his inability to work and his work status were materially false and fraudulent. Talley knew his representations were false, and he made these misrepresentations intentionally.

21. Talley intended to defraud Provident regarding the nature and scope of his work activities, and his ability to work and/or perform certain related activities, in order to receive LTD benefits from Provident.

22. Provident, to its detriment, justifiably reasonably relied on the representations made by Talley regarding his work activities, and his ability to work and/or perform certain related activities.

23. In reliance on the statements made by Talley, Provident paid Talley LTD benefits to which he was not entitled.

24. As a direct and proximate result of Talley's wrongful conduct, as alleged above, Defendants and Counterclaimants have sustained damages in an amount to be proven at trial.

/ / /

25. Talley pursued the above-described course of conduct intentionally, maliciously, oppressively, and fraudulently, with a conscious and reckless disregard of Defendants and Counterclaimants' rights. Defendants and Counterclaimants seek punitive damages in an amount sufficient to deter similar future conduct.

## SECOND CAUSE OF ACTION
## (CONCEALMENT)

26. Defendants and Counterclaimants incorporate herein by reference the allegations set forth in paragraphs 1 through 25.

27. Talley intentionally concealed from Provident the true facts regarding the nature and scope of his work activities, and his ability to work and/or perform certain related activities, including the fact that he was working as a real estate developer in Russia.

28. Talley concealed this information with the intent to defraud Provident of LTD benefit payments.

29. Provident justifiably relied on Talley's representations regarding his work activities, his claimed disability and ability to work during the time he claimed to be disabled, and did not have any reason to know of, nor was it aware of the true facts during the period in which it paid Talley LTD benefits.

30. As a result of Talley's concealment, Provident paid Talley LTD benefits to which he was not entitled.

/ / /

/ / /

31. As a direct and proximate result of Talley's wrongful conduct, as alleged above, Defendants and Counterclaimants have sustained damages in an amount to be proven at trial.

32. Talley pursued the above-described course of conduct intentionally, maliciously, oppressively, and fraudulently, with a conscious and reckless disregard of Defendants and Counterclaimants' rights. Defendants and Counterclaimants seek punitive damages in an amount sufficient to deter similar future conduct.

## THIRD CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION)

33. Provident incorporates herein by reference the allegations set forth in paragraphs 1 through 32.

34. Talley negligently represented to Provident that he was not working, was disabled, and was unable to work. The true facts were that Talley was working as a real estate developer in Russia, and performed work and activities inconsistent with his representations to Provident.

35. Talley had no reasonable ground for believing his representations to Provident that he was unable to work and was allegedly disabled were true.

36. Talley's representations were made with the intent to induce Provident to rely upon them.

37. Provident was unaware of the falsity of Talley's representations and was justified in relying upon the representations.

38. As a result of Provident's reliance on Talley's representations regarding his work activities, his claimed disability and his inability to work, Provident paid Talley LTD benefits to which he was not entitled.

39. As a direct and proximate result of Talley's wrongful conduct, as alleged above, Defendants and Counterclaimants have sustained damages in an amount to be proven at trial.

**<u>FOURTH CAUSE OF ACTION</u>**

**(UNJUST ENRICHMENT)**

40. Provident incorporates herein by reference the allegations set forth in paragraphs 1 through 39.

41. Between April 28, 2003 through April 30, 2007, Provident paid benefits to Talley under the Policy/Plan in the total amount of $364,418.23.

42. For the reasons set forth above, Talley was not entitled to some or all of the benefits paid to him under the Policy/Plan. All benefits paid to Talley in excess of the amounts due him under the Policy/Plan represent an overpayment, and he has been unjustly enriched to that extent.

43. As a direct and proximate result of Talley's conduct, Defendants and Counterclaimants have suffered damages in an amount to be determined according to proof at the time of trial, constituting benefits paid to Talley in excess of the amounts actually due to him under the Policy/Plan.

/ / /

/ / /

**PRAYER**

WHEREFORE, Defendants/Counterclaimants pray for judgment as follows:

1. For general damages in an amount according to proof;

2. For restitution in an amount according to proof;

3. For special damages in an amount according to proof;

4. For costs and reasonable attorneys' fees allowable by law;

5. For pre-judgment interest;

6. For punitive damages in an amount according to proof; and

7. For such other and further relief as the Court deems just.

Dated: July 30, 2008

Burke, Williams & Sorensen, LLP
Stephen H. Galton
Keiko J. Kojima

By: */s/ Stephen H. Galton*
Stephen H. Galton
Attorneys for Defendants and Counterclaimants Provident Life and Accident Insurance Company and U.S. Bancorp Long Term Disability Plan